Stephanie Sheridan (CA 135910)
Meegan B. Brooks (CA 298570)
Natalie M. Cuadros (CA 326368)
Oscar A. Alvarez (CA 344062)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone:   628.600.2250
Facsimile:     628.221.5828
ssheridan@beneschlaw.com
mbrooks@beneschlaw.com
ncuadros@beneschlaw.com
oalvarez@beneschlaw.com

Attorneys for Defendant
J. CREW GROUP, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANI CALDERON and EVGUENIA BABAEVA, individually and on behalf of all other persons similarly situated, <br><br>         Plaintiffs, <br><br>   v. <br><br> J. CREW GROUP, LLC, <br><br>         Defendant. | Case No. 4:23-cv-01695-JSW <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:       August 4, 2023 <br> Time:      9:00 a.m. <br> Location:  Courtroom 5 – 2nd Floor <br> Judge:    Hon. Jeffrey S. White <br><br> [Originally Santa Clara Superior Court Case No. 23CV409957] |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 4, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Jeffrey S. White, United States District Court Judge, located at 1301 Clay Street, Courtroom 5, 2nd Floor, Oakland California, 94612,  Defendant J. Crew Group, LLC ("J. Crew") will and hereby does move the Court for an order under Federal Rules of Civil Procedure 12(b)(6) dismissing the claims in the Complaint filed by Plaintiffs Dani Calderon and Evguenia Babaeva ("Plaintiffs").

Plaintiffs have not satisfied the pleading requirements under Rules 8(a) or Rule 9(b).  Plaintiff Babaeva's claim is barred because she previously agreed to a binding arbitration clause and class action waiver.  Both Plaintiffs fail to allege the circumstances of their purchases, or any facts to suggest that the "Comparable Value" prices on their purchases were false or deceptive.

This motion is based upon this notice, the accompanying memorandum of points and authorities, the Declaration of Jay Goettelmann, and Meegan Brooks and exhibits thereto, the papers on file in this action, and on such other and further matters as may be presented at or before the hearing on this motion. Counsel for the Parties met and conferred as to the arguments herein on March 21, 2023, and in subsequent email communications.

Dated:  May 17, 2023

Respectfully submitted,

*s/ Meegan B. Brooks*
STEPHANIE SHERIDAN (CA 135910)
MEEGAN B. BROOKS (CA 298570)
NATALIE M. CUADROS (CA 326368)
OSCAR A. ALVAREZ (CA 344062)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorneys for Defendant
J. CREW GROUP, LLC

# TABLE OF CONTENTS

I.   BACKGROUND AND SUMMARY OF ALLEGATIONS ............................................... 1

    A.   J. Crew Factory's "Comparable Value" Pricing .................................................. 1

    B.   Plaintiffs' Allegations .......................................................................................... 2

    C.   What is Not in the Complaint ............................................................................... 3

II.  ISSUES PRESENTED ............................................................................................... 4

III. LEGAL STANDARDS .............................................................................................. 4

IV.  PLAINTIFF BABAEVA'S CLAIMS ARE BARRED BECAUSE SHE AFFIRMATIVELY
    AGREED TO AN ARBITRATION CLAUSE IN J. CREW'S TERMS OF USE ...................... 5

    A.   Under the FAA, Courts Must Enforce Arbitration Agreements According to their
        Terms...................................................................................................................... 5

        1.   Plaintiff Entered into Two Separate Valid Arbitration Agreements ...................... 6

        2.   Plaintiff's Claims Fall Squarely Within Both Arbitration Agreements ................. 7

        3.   Both Arbitration Agreements that Plaintiff Accepted Are Enforceable ................ 8

V.   BOTH PLAINTIFFS FAIL TO STATE A CLAIM ............................................................ 9

    A.   Plaintiffs Fail to Plead the Circumstances of their Purchases with Requisite
        Particularity........................................................................................................... 9

    B.   Reasonable Consumers Would Not Share Plaintiffs' Distorted Interpretations
        of J. Crew Factory's "Comparable Value" Prices ............................................. 10

    C.   Plaintiffs Do Not Plead Facts to Suggest J. Crew Factory's Prices Are
        Misleading ........................................................................................................... 11

    D.   Former-Price Laws Are Inapplicable to "Comparable Value" Prices ............... 14

    E.   Plaintiffs Have Not Pleaded, and Cannot Plead, a Fraud Claim........................ 15

    F.   Plaintiffs' Unjust-Enrichment Claim is Not Cognizable .................................. 15

VI.  CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
   529 F. Supp. 3d 1059 (N.D. Cal. 2021) (collecting California and federal cases) .............................15

*Alan Neuman Prods., Inc. v. Albright*,
   862 F.2d 1388 (9th Cir. 1988) ...........................................................................................................9

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013).............................................................................................................................5

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011).............................................................................................................................5

*Augustine v. Talking Rain Beverage Co., Inc.*,
   386 F. Supp. 3d 1317 (S.D. Cal. 2019)..............................................................................................15

*Azimpour v. Sears, Roebuck & Co.*,
   2016 WL 7626188 (S.D. Cal. Oct. 17, 2016) ......................................................................................9

*Azimpour v. Select Comfort Corp.*,
   No. CV 15-4296(DSD/KMM), 2016 WL 3248231 (D. Minn. June 13, 2016) ..................................13

*Barber v. DSW Inc.*,
   SACV 15-2024-JGB, (C.D. Cal. April 4, 2016) .................................................................................13

*Becerra v. Dr. Pepper/Seven-Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ...........................................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................................4

*Blau v. AT&T Mobility*,
   No. C 11-00541 CRB, 2012 WL 10546 (N.D. Cal. Jan. 3, 2012) .......................................................6

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) .............................................................................................................4

*Boatman v. Houzz Inc.*,
   No. 22-CV-00738-JSW, 2022 WL 1528171 (N.D. Cal. Apr. 7, 2022) ................................................7

*Branca v. Nordstrom, Inc.*,
   No. 14CV2062-MMA JMA, 2015 WL 1841231 (S.D. Cal. Mar. 20, 2015)......................................13

*Britton v. Co-op Banking Grp.*,
   4 F.3d 742 (9th Cir. 1993) ...................................................................................................................8

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) .............................................................................15

*Brown v. Starbucks Corp.*,
   18CV2286-JM-WVG, 2019 WL 4183936 (S.D. Cal. Sept. 3, 2019).................................15

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) .........................................................................................12

*Carvalho v. HP, Inc.*,
   No. 21-CV-08015-BLF, 2022 WL 2290595 (N.D. Cal. June 24, 2022) ......................12, 14

*Cayanan v. Citi Holdings, Inc.*,
   928 F. Supp. 2d 1182 (S.D. Cal. 2013) ..............................................................................8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ...........................................................................................8

*Cohen v. CBR Sys., Inc.*,
   No. 21-CV-06527-HSG, 2022 WL 4087507 (N.D. Cal. Sept. 6, 2022)................................9

*Comedy Club, Inc. v. Improv W. Assocs.*,
   553 F.3d 1277 (9th Cir. 2009) ...........................................................................................6

*Cordas v. Uber Techs., Inc.*,
   228 F. Supp. 3d 985 (N.D. Cal. 2017) ...........................................................................6, 7

*Dennis v. Ralph Lauren Corp.*,
   No. 16-cv-1056, 2016 WL 7387356 (S.D.Cal., Dec. 20, 2016) .......................................13

*Dohrmann v. Intuit, Inc.*,
   823 F. App'x 482 (9th Cir. 2020) ......................................................................................6

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ...........................................................................................10

*In re Facebook Biometric Info. Priv. Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..........................................................................5, 7

*Fagerstrom v. Amazon.com, Inc.*,
   141 F. Supp. 3d 1051 (S.D. Cal. 2015), *aff'd sub nom. Wiseley v. Amazon.com, Inc.*,
   709 F. App'x 862 (9th Cir. 2017) ....................................................................................5, 8

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)...........................................................................................................6

*Forsyth v. HP Inc.*,
   No. 5:16-CV-04775-EJD, 2017 WL 4168574 (N.D. Cal. Sept. 20, 2017).........................6

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
**Case No. 4:23-cv-01695-JSW**

*Gentry v. eBay, Inc.*,
    99 Cal. App. 4th 816 (2002) ........................................................................................11

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ........................................................................................................5

*Handy v. LogMeIn, Inc.*,
    No. 1:14-CV-01355 - JLT, 2015 WL 4508669 (E.D. Cal. July 24, 2015) ...................11

*Haskins v. Symantec Corp.*,
    No. 14-16141, 2016 WL 3391237 (9th Cir. June 20, 2016) .........................................9

*Hooked Media Grp., Inc. v. Apple Inc.*,
    55 Cal. App. 5th 323, *reh'g denied* (June 19, 2020), *review denied* (Dec. 31, 2020) .........................15

*Hopkins & Carley, ALC v. Thomson Elite*,
    No. 10-CV-05806-LHK, 2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) ..........................5

*Jacobo v. Ross Stores, Inc.*,
    2016 WL 3482041 (C.D. Cal. Feb. 23, 2016)..............................................................14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................................4, 9

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) ........................................................................................6

*Koehler v. Litehouse, Inc.*,
    2012 WL 6217635 (N.D. Cal. Dec. 13, 2012)..............................................................11

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011) (*per curiam*) ..................................................................................5

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) .......................................................................................10

*Lisner v. Sparc Group LLC.*,
    No. 2:21-CV-05713-AB (GJSx), (C.D. Cal. Dec. 29, 2021)........................................12

*Mahfood v. QVC, Inc.*,
    No. SACV06-0659-AG(ANx), 2007 WL 9363986 (C.D. Cal. Feb. 7, 2007) ...................13

*Maloney v. Verizon Internet Servs., Inc.*,
    413 F. App'x 997 (9th Cir. 2011) .................................................................................11

*Marselian v. Wells Fargo & Co.*,
    514 F. Supp. 3d 1166 (N.D. Cal. 2021) .........................................................................6

*McDonald v. Wells Fargo Bank, N.A.*,
    No. CV 13-02334-KAW, 2013 WL 6512881 (N.D. Cal. Dec. 12, 2013) .......................9

iv

*Meyer v. T-Mobile USA Inc.*,
    836 F. Supp. 2d 994 (N.D. Cal. 2011) .............................................................7

*Millam v. Energizer Brands, LLC*,
    No. 521CV01500JWHSHKX, 2022 WL 19001330 (C.D. Cal. Dec. 9, 2022)...................11

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ....................................................................10

*Mortensen v. Bresnan Commc'ns, LLC*,
    722 F.3d 1151 (9th Cir. 2013) ..................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..............................................................................5, 7

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*,
    86 Cal. App. 4th 303 (2000) ...................................................................11

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ....................................................................14

*Nevarez v. Forty Niners Football Co.*,
    2017 WL 3492100 (N.D. Cal. Aug. 15, 2017) ....................................................7, 8

*Norman v. Uber Techs., Inc.*,
    No. 20-CV-06700-JSW, 2021 WL 4497870 (N.D. Cal. Apr. 14, 2021) .............................6

*Nunez v. Best Buy Co.*,
    315 F.R.D. 245 (D. Minn. 2016)...............................................................9, 14

*Pirelli Armstrong Tire Corp. Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ..................................................................4

*Rael v. Dooney & Bourke, Inc.*,
    2016 WL 3952219 (S.D. Cal. July 22, 2016) ..................................................12, 13

*Rael v. New York & Co., Inc.*,
    2016 WL 7655247 (S.D. Cal. Dec. 28, 2016)....................................................13

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ........................................................................15

*Schertzer v. Samsonite Co. Stores, LLC*,
    2020 WL 4281990 (S.D. Cal. Feb. 25, 2020) ...................................................12

*Seegert v. Luxottica Retail N.A., Inc.*,
    2018 WL 3472561 (S.D. Cal. July 19, 2018) ...................................................13

*Sonic Fremont, Inc. v. Faizi*,
    No. 12-cv-04537 NC 2012 WL 6051959 (N.D. Cal. Dec. 5, 2012)..................................6

v

*Sperling v. DSWC, Inc.*,
    699 F. App'x 654 (9th Cir. 2017) ............................................................11, 12

*Thomas v. Cricket Wireless, LLC*,
    506 F. Supp. 3d 891 (N.D. Cal. 2020) ........................................................7, 8

*Vavak v. Abbott Lab'ys, Inc.*,
    2011 WL 10550065 (C.D. Cal. June 17, 2011) ..............................................15

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .......................................................................9

*Voll v. HCL Techs. Ltd.*,
    No. 18-CV-04943-LHK, 2019 WL 144863 (N.D. Cal. Jan. 9, 2019) ..................6

*Webber v. Uber Techs., Inc.*,
    No. 18-cv-2941, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) .......................7

*Welk v. Beam Suntory Import Co.*,
    124 F. Supp. 3d (S.D. Cal. Aug. 21, 2015) ...................................................10

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999) .......................................................................14

**Statutes**

9 U.S.C. § 2 ...................................................................................... *passim*

9 U.S.C. § 3 ................................................................................................5

Cal. Bus. & Prof. Code § 17501 .................................................................14

Cal. Civ. Code §1770(a)(13) .......................................................................14

Cal. Code Regs. tit. 4, § 1301 ....................................................................14

**Other Authorities**

16 C.F.R. § 233.1 .......................................................................................2

16 C.F.R.§ 233.2(c) .............................................................................1, 2, 10

16 CFR § 233.1(a) .....................................................................................14

Fed. R. Civ. P. 8 ......................................................................................1, 4

Fed. R. Civ. P. 9 ............................................................................... *passim*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2   Plaintiffs' Complaint attempts to mimic the same conclusory allegations brought in over 200 suits

3   across the country—most of which have been swiftly dismissed at the pleadings stage—yet the allegations

4   here are far weaker than those in practically every other case.  The Complaint does not include a single

5   detail to support Plaintiffs' bald allegation that J. Crew Factory's ("Factory") pricing is false or deceptive.

6   Nor could it, as Plaintiffs do not—and cannot—allege that the "Comparable Value" prices on their items

7   did not reflect the value of comparable items in the marketplace at the time of their purchase.

8   Plaintiffs' claims as to the Factory outlet website fail because Ms. Babaeva is the only named

9   Plaintiff who claims to have shopped online, and she agreed to J. Crew's arbitration clause and class action

10  waiver when she placed her online order.  Further, neither one of the Plaintiffs can state a claim as to

11  Factory's in-store pricing because they do not identify any specific item they purchased from a Factory

12  store—much less the dates of their purchases, the statements that allegedly deceived them, or facts

13  suggesting that the listed prices did not actually meet their expectations.  Plaintiffs' conclusory allegations

14  about the purchase of *undisclosed* items, at *undisclosed* prices, in reliance on *unspecified* advertisements,

15  *based solely on* "information and belief," fall woefully short of what is required by Rules 8(a) and 9(b).

16  In any event, Plaintiffs cannot state a claim for false former pricing because reasonable consumers

17  would not interpret "Comparable Value" to only mean a price previously charged by J. Crew.  Indeed, the

18  Federal Trade Commission (FTC) and Better Business Bureau (BBB) have each blessed the term

19  "Comparable Value" as a reasonable way for retailers to convey prices charged by *other* retailers for *non-*

20  *identical* items of "essentially similar quality"—i.e., the "value" of "comparable" items.  *See, e.g.*, 16

21  C.F.R. § 233.2(c).  Plaintiffs cannot plead around this self-explanatory disclosure.

22  Dismissal is warranted for these and additional reasons, as explained below.

23  ## I.   BACKGROUND AND SUMMARY OF ALLEGATIONS

24  ### A.   J. Crew Factory's "Comparable Value" Pricing

25  Founded in 1947, J. Crew Group, LLC is an American multi-brand retailer of leisurewear,

26  professional apparel, and accessories.  In addition to its namesake "J. Crew" brick-and-mortar stores and

27  website, J. Crew sells merchandise through its Factory outlet stores and the Factory website.  As an outlet

28  brand, Factory offers fashionable items at lower prices than many traditional retailers, department stores,

1

and other mall brands.  The price tags on items in Factory stores list a "Comparable Value" price, which is subject to discounts offered by Factory.

The FTC expressly permits retailers to use this kind of "comparable value comparison," which indicates that merchandise of "*like* grade and quality—*in other words, comparable or competing merchandise* … of *essentially similar* quality" is being sold for the listed price.  16 C.F.R. § 233.2(c) (emphases added).  The BBB similarly endorses comparable value comparisons: "Advertisers may offer a price reduction or savings by comparing their selling price with" that of a "*comparable* product" in the open market. Code of Advertising § 2.l.3, *available at* https://www.bbb.org/code-of-advertising/ (emphasis added).  Both the FTC and BBB agree comparable value comparisons can "serve a useful and legitimate purpose," and can be indicated with language such as "Comparable Value $15.00."  16 C.F.R. § 233.2(c); *see also* Code of Advertising § 2 ("[C]omparative price advertising plays an important role in promoting vigorous competition among retailers.").  They also both distinguish comparable-value comparisons from former prices, for which they offer distinct and separate guidance, including that each item should have been offered for sale at the higher former price.  *See*, *e.g.*, 16 C.F.R. § 233.1.

## B.    Plaintiffs' Allegations

Plaintiffs allege that J. Crew displays inflated "Comparable Value" prices in its Factory stores and on its Factory website to trick customers "into believing its [Factory] products are worth and are ordinarily offered at a higher price and are of a 'comparable value' to its [J. Crew] products, which they are not." Compl. ¶ 42.

Plaintiff Calderon allegedly bought unspecified "jeans, shirts, and shorts" from a Factory outlet store in Livermore, California, on an unknown date in June 2022, after seeing unspecified "representations" that unidentified items "were being offered at a discounted 'sale' price."  *Id*. ¶¶ 37, 13.  Plaintiff Babaeva, in turn, claims to have made "multiple purchases" from the Factory website and the San Jose Factory outlet store, but also fails to specify the dates (or even the months) of any of her alleged purchases.  *Id*. ¶ 38.  The Complaint identifies two pairs of shorts that Babaeva allegedly purchased online "over six months [ago]," but does not specify anything else about these transactions, such as the amounts she paid, statements she relied on, or even the items' allegedly deceptive reference prices.  *Id*. ¶ 39.  Like Calderon, Babaeva does not identify anything she has ever bought in a Factory store.

Plaintiffs claim in conclusory fashion that they "did not receive the benefit of [their] bargain because Defendant's Products were not of the represented quality and value." *Id*. ¶¶ 15, 19.  In support, they allege—solely based on "information and belief"—that: (1) Factory allegedly did not previously sell the items at the "Comparable Value" prices; and (2) the "Comparable Value" prices allegedly reflect apples-to-oranges comparisons to higher-quality items sold by full-priced J. Crew stores.  *Id*. ¶ 5.

Plaintiffs purport to bring claims for violations of California's False Advertising Law, Unfair Competition Law, and Consumers Legal Remedies Act on behalf of a putative class of California consumers.  Additionally, they seek to bring nationwide claims for fraud and unjust enrichment.

### C.   What is Not in the Complaint

The Complaint does not identify any item that either Plaintiff purchased in store, or any representation they saw or relied on, anywhere—largely depriving J. Crew of the opportunity to identify the products that Plaintiffs' claim were priced deceptively.  Plaintiffs' Complaint rests on their purported belief that Factory was advertising a discount off of its own former prices, but identifies nothing that J. Crew did that would cause a reasonable person to have such beliefs.  Compl. ¶¶ 13,17.  Plaintiffs do not allege the amounts by which any prices were allegedly inflated, nor do they specify how they interpreted the phrase "Comparable Value."  *Id*. ¶ 4.  The Complaint merely alleges that Plaintiffs "reviewed the accompanying labels, disclosures, warranties, and marketing materials."  *Id*. ¶¶ 13, 17.  Although Plaintiffs repeatedly place quotation marks around the term " 'sale' price" when referencing the lower amount at which each item was offered, this is meaningless because Plaintiffs fail to explain whether these words appeared on anything Plaintiffs ***actually saw***, or whether they instead reflect *Plaintiffs'* subjective interpretation of the lower price (*i.e.,* they believed that the items were on sale from higher former prices).  The only photograph in the Complaint from inside any Factory store was taken outside of California, and merely shows the price tag itself on an irrelevant item that Plaintiffs do not claim to have purchased.  *Id*.

Plaintiffs do not plead facts showing that the items they purchased, or similar merchandise, were never in fact offered for their "Comparable Value" prices in the open market.  Instead, Plaintiffs rely solely on "information and belief," a phrase that appears on repeat throughout the Complaint.  *E.g.,* Compl. ¶¶ 4, 5, 33, 44.  Plaintiffs also fail to allege facts to support their claim that Factory products are of lower quality than goods sold at full-priced J. Crew stores.  Finally, Plaintiffs do not allege that the undisclosed items

they purchased are defective; that they have failed to satisfy their expectations in terms of how they look, fit, feel or how well they have lasted; or that they are otherwise worth less than the undisclosed amounts they paid. Instead, it appears that Plaintiffs received the items they wanted, at prices they agreed to pay, and that Plaintiffs' sole injury is their disappointment from allegedly not receiving more valuable items than the ones they voluntarily purchased. Their subjective disappointment is not a cognizable claim.

## II.   ISSUES PRESENTED

**A.**   Do Plaintiffs satisfy Rule 9(b)'s requirement that they allege the "who, what, when, where, and why" of their alleged fraud claims, when they have not identified the items they purchased, when they bought them, the representations they relied on, or facts to suggest those representations are inaccurate?

**B.**   Have Plaintiffs plausibly alleged that reasonable consumers interpret a "Comparable Value" reference price as a former price, especially given that the FTC and BBB have identified this term is an acceptable way for a retailer to compare prices to similar items sold elsewhere in the marketplace?

**C.**   Under Rules 8 and 9(b), is "information and belief" a sufficient factual basis for alleging that a reference price is inaccurate or deceptive?

## III.   LEGAL STANDARDS

A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Accordingly, a complaint that merely leaves "open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery" should not be sustained. *Id.* at 561 (citation omitted). Rather, the facts set forth in the complaint must be sufficient to "nudge [the] the claims across the line from conceivable to plausible." *Id.* at 570.

Because Plaintiffs' claims all sound in fraud, they must also satisfy Rule 9(b). *See Kearns v. Ford Motor* Co., 567 F.3d 1120, 1124–25 (9th Cir. 2009). This heightened pleading standard not only gives a defendant fair notice of the serious charges alleged so that it can defend itself, but also prohibits a plaintiff from "unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (internal quotation omitted); *see also Pirelli Armstrong Tire Corp. Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th

4

Cir. 2011) (Rule 9 "is designed to discourage a 'sue first, ask questions later' philosophy.").

## IV.   PLAINTIFF BABAEVA'S CLAIMS ARE BARRED BECAUSE SHE AFFIRMATIVELY AGREED TO AN ARBITRATION CLAUSE IN J. CREW'S TERMS OF USE

Although Plaintiff Babaeva does not allege the date of her "several" purchases from the J. Crew Factory website, J. Crew's records confirm that at least one of these purchases was made on June 1, 2021, which means she would have necessarily agreed to the Factory website's Terms of Use ("Website Terms") during that visit.  Goettelmann Decl.  ¶ 4.  Because those terms include an arbitration clause and class action waiver, her claim should be dismissed.  *See Fagerstrom v. Amazon.com, Inc*., 141 F. Supp. 3d 1051, 1074 (S.D. Cal. 2015), *aff'd sub nom. Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017) (citation omitted).[1]  Separately, Plaintiff implicitly agreed to the Terms & Conditions for J. Crew's Rewards Program ("Rewards Terms"), which also contained an arbitration clause, because she received multiple emails alerting her to these terms, and kept making purchases using her Rewards account thereafter.  *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016).

### A.   Under the FAA, Courts Must Enforce Arbitration Agreements According to their Terms

The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 24 (1991).  The Act reflects an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (*per curiam*) (citation omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983).  Its "principal purpose . . . is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (citation omitted); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms.").

The FAA requires courts to compel arbitration if: (1) a valid agreement to arbitrate exists and (2)

---

[1] Although staying, and not dismissing, is the remedy specifically contemplated by 9 U.S.C. § 3, it is well-settled that the court "may compel arbitration and dismiss the action" where, as here, an arbitration agreement is "broad enough to cover all of a plaintiff's claims." *Hopkins & Carley, ALC v. Thomson Elite*, No. 10-CV-05806-LHK, 2011 WL 1327359, at *8 (N.D. Cal. Apr. 6, 2011).

the dispute falls within the scope of that agreement. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564-565 (9th Cir. 2014); *Norman v. Uber Techs., Inc.*, No. 20-CV-06700-JSW, 2021 WL 4497870, at *2 (N.D. Cal. Apr. 14, 2021). Where, as here, both elements are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Forsyth v. HP Inc.*, No. 5:16-CV-04775-EJD, 2017 WL 4168574, at *1 (N.D. Cal. Sept. 20, 2017) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

### 1.   Plaintiff Entered into Two Separate Valid Arbitration Agreements

"It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'" *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). "[T]he most minimal indication of the parties' intent to arbitrate must be given full effect." *Sonic Fremont, Inc. v. Faizi*, No. 12-cv-04537 NC 2012 WL 6051959, at *3 (N.D. Cal. Dec. 5, 2012) (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991)).

In determining whether parties agreed to arbitrate, "courts . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Voll v. HCL Techs. Ltd.*, No. 18-CV-04943-LHK, 2019 WL 144863, at *5 (N.D. Cal. Jan. 9, 2019). "Under California law, mutual assent is the key to contract formation." *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017). In applying this standard, courts hold that "in the absence of any alleged fraud, overreaching, or excusable neglect, a Plaintiff is deemed to have assented to all of the agreement's terms, whether or not he actually understood or even read them." *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1173 (N.D. Cal. 2021); *see also Blau v. AT&T Mobility*, No. C 11-00541 CRB, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012) ("Defendants have demonstrated that Plaintiffs agreed to arbitrate by demonstrating that Plaintiffs agreed to Defendants' terms of service.")

In the context of online transactions, courts interpreting California law routinely enforce contracts where, as here, (i) a consumer is expressly told that by clicking a button to complete a purchase or register on a Website, they are agreeing to be bound by a set of terms; and (ii) the website contains a link to the terms conspicuously and in proximity to the button that is clicked. *See, e.g. Dohrmann v. Intuit, Inc.*, 823

F. App'x 482, 484 (9th Cir. 2020); *Boatman v. Houzz Inc.*, No. 22-CV-00738-JSW, 2022 WL 1528171, at *3 (N.D. Cal. Apr. 7, 2022); *Nevarez v. Forty Niners Football Co.*, 2017 WL 3492100, at *7–8 (N.D. Cal. Aug. 15, 2017); *Cordas v. Uber Techs.*, Inc., 228 F. Supp. 3d 985, 990 (N.D. Cal. 2017).

Here, there is no question that Plaintiff Babaeva agreed to the Website Terms, including the arbitration clause, when she made her online purchase on June 1, 2021.  Goettelmann Decl.  ¶ 4.  At the time of her purchase, the "Checkout" page conspicuously stated, "By placing your order, you agree to our Terms of Use and Privacy Policy."  *Id.* ¶¶ 5–6.  The underlined text provided a hyperlink to the full Terms. *Id.* ¶ 6.  It would have been impossible for Plaintiff to make her online purchase without proceeding through this page.  *Id.* ¶ 4.  If Plaintiff did not agree to the Terms, she could have chosen not to complete her purchase.  Instead, she proactively agreed to the Terms when she opted to place her order.

As a member of J. Crew's Rewards program, Plaintiff is also bound by the Rewards Terms.  Plaintiff was on clear notice of these terms, as she received multiple emails alerting her to them—including one with the subject line "Important updates to our Terms & Conditions"—and yet continued making purchases using her Rewards account.  *Id.* ¶ 10, Exh. C.  Several courts in this Circuit have held that a customer who receives an email about an update to terms of service and continues to use the related service is bound by the updated terms.  *See Webber v. Uber Techs., Inc.*, No. 18-cv-2941, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016).

### 2.  Plaintiff's Claims Fall Squarely Within Both Arbitration Agreements

Because the FAA reflects a "liberal federal policy favoring arbitration agreements," the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24–25; *see also Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891, 903 (N.D. Cal. 2020) (same).  "In the absence of any express provision excluding a particular grievance from arbitration . . .  only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 999 (N.D. Cal. 2011).

Here, the applicable version of the Website Terms' arbitration agreement broadly covers any dispute that Plaintiff may have against J. Crew, including claims stemming from any prior purchases:

ANY DISPUTE OR CLAIM ARISING OUT OF OR RELATING IN ANY WAY TO THESE TERMS, YOUR VISIT TO THE SITE, OR TO ANY PURCHASE,

TRANSACTION, RETURN OR OTHER INTERACTION WITH J. CREW (INCLUDING CLAIMS RELATING TO J. CREW'S ADVERTISEMENTS AND DISCLOSURES, EMAIL AND MOBILE SMS MESSAGES SENT BY J. CREW, OR J. CREW'S COLLECTION OR USE OF YOUR INFORMATION) ("DISPUTE") SHALL BE RESOLVED THROUGH BINDING ARBITRATION, RATHER THAN IN COURT.

Goettelmann Decl., Ex. A.  This broad provision plainly encompasses Plaintiff Babaeva's claims in the present action.  Provisions such as J. Crew's are "routinely used . . . to secure the broadest possible arbitration coverage," and are regularly enforced.  *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993); *see also Chiron Corp.,v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 113 (9th Cir. 2000); *Thomas*, 506 F. Supp. 3d at 903; *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013).

Similarly, the Rewards Terms's arbitration clause broadly governs "ANY DISPUTE RELATING IN ANY WAY TO … THE PROGRAM," which plainly encompasses claims arising from Plaintiff's purchases here, in which she earned and redeemed Rewards benefits.  Goettelmann Decl. ¶¶ 15–16.

### 3.  Both Arbitration Agreements that Plaintiff Accepted Are Enforceable

The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This "savings clause" of the FAA "preserves generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013).  Here, Plaintiff has no basis to avoid her agreement to arbitrate.

The arbitration agreement is not procedurally unconscionable.  Plaintiff Babaeva chose to accept the Website Terms by placing her online order, after being informed that "By placing your order, you agree to our Terms of Use and Privacy Policy."  The full terms, including the arbitration clause, were a simple click away.  Plaintiff Babaeva therefore had "reasonable opportunity to understand" that she would be bound by the Website Terms, which she could have easily chosen not to accept by closing the screen rather than completing her purchase.  *Wiseley*, 709 F. App'x 8 at 864; *see also Nevarez v. Forty Niners Football Co.*, 2017 WL 3492100, at *7–8 (N.D. Cal. Aug. 15, 2017) (enforcing contract where user clicked "Submit Order" and below the button the page stated: "By continuing past this page, you agree to our terms of use").

The Rewards Terms are not procedurally unconscionable, either, as they were presented to Plaintiff in an email with a clear subject line that put Plaintiff on inquiry notice of their contents.  She manifested

consent to these terms when she opted to keep making purchases from Factory stores.

The Website Terms and Rewards Terms are also not substantively unconscionable—that is, so one-sided as to be "overly harsh" or "shock the conscience." *Cohen v. CBR Sys., Inc.*, No. 21-CV-06527-HSG, 2022 WL 4087507, at *5 (N.D. Cal. Sept. 6, 2022) (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)). They each provided Babaeva the full right to pursue all available remedies in an efficient manner. The Website Terms further allow her to choose the location of the arbitration (or to arbitrate by phone), and states that J. Crew will pay the reasonable costs (unless the arbiter finds Plaintiff's claims frivolous).

## V.   BOTH PLAINTIFFS FAIL TO STATE A CLAIM

### A.   Plaintiffs Fail to Plead the Circumstances of their Purchases with Requisite Particularity

To plead fraud with particularity, the Complaint must "identify the who, what, when, where, and how of the alleged misconduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (quoting *Neubronner v. Milken,* F.3d 616, 627 (9th Cir. 1994)). Plaintiffs do not identify a single item that either of them has bought in a Factory store (the "what"), any specific statements they saw before making any online or in-store purchase (the "why"), where they saw any such representations (the "where"), or the date of any such purchase (the "when"). Each of these deficiencies is an independent basis for dismissal under Rule 9(b). *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1988) (requiring "time, place and specific content of the false representations.").[2] Plaintiffs' failure to specify "which [representations they] found material" is yet another fatal deficiency. *Kearns*, 567 F.3d at 1126; *see also Haskins v. Symantec Corp.*, No. 14-16141, 2016 WL 3391237, at *1 (9th Cir. June 20, 2016) ("Because [plaintiff's] complaint did not allege that she read and relied on a specific misrepresentation by [defendant], she failed to plead her fraud claims with particularity as required by Rule 9(b)").

---

[2] *See also Nunez v. Best Buy Co.,* 315 F.R.D. 245, 250 (D. Minn. 2016) ("[plaintiff] fails to provide specific facts about [the] alleged fraudulent advertising with respect to [plaintiff's] purchase," such as the specific model of microwave that he purchased or the date he bought it); *Azimpour v. Sears, Roebuck & Co.*, 2016 WL 7626188, at *7 (S.D. Cal. Oct. 17, 2016) (Plaintiff "merely" alleged he "observed merchandise for which 'regular' prices were listed alongside 'discounted' prices in larger, bold fonts" . . . "Without more, Defendant plainly cannot verify Plaintiff's allegations of fraud as it applies to its sale of the pillow, much less any other product."); *McDonald v. Wells Fargo Bank, N.A.*, No. CV 13-02334-KAW, 2013 WL 6512881, at *5 (N.D. Cal. Dec. 12, 2013) (same).

**B.      Reasonable Consumers Would Not Share Plaintiffs' Distorted Interpretations of J. Crew Factory's "Comparable Value" Prices**

Plaintiffs do not explain what led them to believe that each "Comparable Value" price was J. Crew's former price for the same item, nor do they purport to argue that the term "Comparable Value" itself could reasonably be interpreted as a former price.  Compl. ¶ 4.  The Court should reject Plaintiffs' objectively unreasonable interpretation.  *See*, *e.g.*, *Ebner v. Fresh, Inc.,* 838 F.3d 958, 965 (9th Cir. 2016).

In California, "likely to deceive" means what it says:

> *more than a mere possibility* that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such that it is *probable* that a *significant portion* of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (emphases added); *accord Becerra v. Dr. Pepper/Seven-Up, Inc.,* 945 F.3d 1225, 122829 (9th Cir. 2019).  Thus, to state a claim, Plaintiffs must allege facts showing that it is probable—not just possible—that a significant portion of customers would understand "Comparable Value" to mean that J. Crew previously offered the same item at the listed price.

Although deception can be a fact issue, courts regularly address this issue at the pleadings stage when, as here, the plaintiff's proffered interpretation conflicts with the representation's plain meaning.  *See*, *e.g.*, *Moore v. Trader Joe's Co.,* 4 F.4th 874, 883 (9th Cir. 2021); *Welk v. Beam Suntory Import Co.*, 124 F. Supp. 3d at 1044 (S.D. Cal. Aug. 21, 2015).

In assessing the plain meaning, courts consider the entire advertising statement and may consult dictionary definitions.  *See, e.g., Dr. Pepper/Seven Up*, 945 F.3d at 1229.  "Comparable," as used in "Comparable Value," simply means "SIMILAR, LIKE," as in "fabrics of *comparable* quality" and "The two houses are *comparable* in size." https://www.merriam-webster.com/dictionary/comparable (emphasis in original).  "Value," in turn, means "the monetary worth of something : MARKET PRICE," or "a fair return or equivalent in goods, services, or money for something exchange." https://www.merriam-webster.com/dictionary/value (emphasis in original).  When taken together, "Comparable Value" plainly refers to the market price of a similar item—exactly in line with the FTC's definition for "comparable value comparisons."   16 C.F.R. § 233.2(c) (discussing comparisons to "*comparable or competing merchandise*…of *essentially similar* quality") (emphasis added).

Reasonable consumers shopping in outlet stores like Factory would not disregard the word "comparable" and interpret "Comparable Value" to mean "J. Crew's former price for the identical item." *See Maloney v. Verizon Internet Servs., Inc.*, 413 F. App'x 997, 999 (9th Cir. 2011) ("up to 3 Mbps" would not be reasonably interpreted to guarantee a speed of 3 Mbps); *Millam v. Energizer Brands, LLC*, No. 521CV01500JWHSHKX, 2022 WL 19001330, at *4 (C.D. Cal. Dec. 9, 2022) (listing cases; "Plaintiffs ignore the qualifying phrase 'up to 50% longer lasting,' which a reasonable consumer would not understand to mean that the batteries are *always* or *consistently* 50% longer lasting") (emphasis in original); *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *4 (N.D. Cal. Dec. 13, 2012) ("The qualifier 'may' does not mean that a reasonable consumer would understand that the Product is certain to fulfill its claims"). "[W]here, as here, deception can be found only through ignoring the plain meaning of the words," an advertisement "could not possibly" have deceived a reasonable consumer. *Handy v. LogMeIn, Inc.*, No. 1:14-CV-01355 - JLT, 2015 WL 4508669, at *8 (E.D. Cal. July 24, 2015).

Moreover, consumers would most likely construe "Comparable Value" as a statement of opinion as to the value of the item rather than an expression of fact. *See, e.g.*, *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 310 (2000) ("Value is quintessentially a matter of opinion, not a statement of fact."); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 835 (2002) ("[a] representation is one of opinion 'if it expresses only [...] [one's] judgment as to quality, value, authenticity, or other matters of judgment' ") (quoting *Restatement (Second) of Torts*, § 538A).

### C.    Plaintiffs Do Not Plead Facts to Suggest J. Crew Factory's Prices Are Misleading

Although Plaintiffs robotically repeat that the "Comparable Value" prices are false and deceptive, they fail to allege any facts to support these claims, as Rules 8 and 9(b) require. Indeed, the Complaint does not reflect ***any*** effort by Plaintiffs to determine whether the "Comparable Value" prices on their purchases were: (a) previously offered by J. Crew (as they allegedly believed); (b) the same quality offered in full-price J. Crew stores (as they now allege the prices are intended to convey); or (c) the price of similar items in the market (as the FTC states that reasonable consumers would interpret the phrase).

Plaintiffs cannot satisfy Rule 9(b)'s heightened pleading standards by simply pointing to a reference price and claiming it is false. *Sperling v. DSWC, Inc.*, 699 F. App'x 654, 655 (9th Cir. 2017). Instead, they must "allege sufficient facts to show with particularity how [and] why . . . the [reference] price was

11

false or deceptive." *Id*.   The deficient allegations in *Sperling* are like those here: the *Sperling* plaintiff claimed that the defendant's "Compare At" price comparisons were deceptive because they did not accurately reflect competitors' prices for the same items.  *Id*. at 655.  Unlike Plaintiffs here, however, the *Sperling* plaintiff claimed to have investigated the shoes she bought, and identified other retailers selling the same item for less than DSW's "Compare At" prices.  *Id*.  These investigation efforts were *still* insufficient, because the plaintiff did not allege sufficient facts concerning her alleged investigation.  *Id.*

      *Sperling* is just one of many pricing cases that have been dismissed notwithstanding allegations of an investigation into the retailer's pricing, or into other retailers' prices for similar items.  For example:

- *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014) (affirming dismissal even where the complaint included a "list … of apparent sales conducted by JAB between August 2010 and August 2012 to … support[] an inference that JAB participates in the 'pattern and practice of advertising' sale prices that are simply regular prices…").

- *Lisner v. Sparc Group LLC.,* No. 2:21-CV-05713-AB (GJSx), at *6 (C.D. Cal. Dec. 29, 2021) (in nearly identical case brought by Plaintiff's same counsel: "Plaintiffs' failure to allege the pricing information for the items Plaintiffs purchased in the FAC and/or investigate at the Aéropostale retail stores located in California is fatal").

- *Carvalho v. HP, Inc.*, No. 21-CV-08015-BLF, 2022 WL 2290595, at *4 (N.D. Cal. June 24, 2022) ("Plaintiffs have not met their pleading burden. Plaintiffs' complaint does not contain any allegations that the strikethrough prices displayed on HP's website are 'inflated' or 'why they do not accurately reflect prevailing market prices.'").

- *Rael v. Dooney & Bourke, Inc.*, 2016 WL 3952219, at *3 (S.D. Cal. July 22, 2016) (dismissing complaint premised exclusively on allegations of pricing in outlet stores, where plaintiff did not claim to have investigated mainline stores or website).

- *Schertzer v. Samsonite Co. Stores, LLC*, 2020 WL 4281990, at *5 (S.D. Cal. Feb. 25, 2020) (dismissing complaint where, *inter alia*, plaintiff "does not allege that the products offered for sale at Defendant's outlet stores were products not originally offered for sale in Defendant's retail stores or through Defendant's authorized retailers.") (internal citations omitted).

- *Rael v. New York & Co., Inc.*, 2016 WL 7655247, at *7 (S.D. Cal. Dec. 28, 2016) ("[Counsel's] declaration *does not specify a single detail of his alleged investigation*. [It] is simply a restatement of the conclusory allegations that Plaintiff states in her SAC.") (emphasis added).

- *Seegert v. Luxottica Retail N.A., Inc.*, 2018 WL 3472561, at *3 (S.D. Cal. July 19, 2018) ("The so-called particular facts supporting this allegation are simply conclusions based upon an investigation by Plaintiff's counsel that 'confirmed' and 'concluded' that 'the prescription lenses were priced with false discounts from illusory 'regular' or reference prices,' and never sold at the original price, with or without the purchase of eyeglass frames.").

- *Dennis v. Ralph Lauren Corp.*, No. 16-cv-1056, 2016 WL 7387356 , at *4 (S.D.Cal., Dec. 20, 2016) (granting motion to dismiss, in part based on plaintiff's failure to allege that a product "was unavailable at the $74.99 price at other locations offering Ralph Lauren products, such as the 'Polo retail stores[], high-end department stores, and related online stores.'").[3]

Plaintiffs' factual allegations here pale in comparison to those that courts have consistently found deficient in the cases above.  Plaintiffs do not allege any facts regarding the value or market pricing for any item they purchased—indeed, they do not even identify most of the items they purchased.  Plaintiffs do not claim to have ever even *entered* a mainline J. Crew store or looked for similar items anywhere else around the time of their purchases.  Plaintiffs also fail to allege support for their conclusions that the items made for Factory outlets are of inferior quality to items sold at J. Crew's full-priced line stores.  *See Dooney & Bourke, Inc.,* 2016 WL 3952219, at *4 ("Plaintiff's broad assertion that outlet products are by definition inferior is insufficient to meet the Rule 9(b) pleading requirement.")

---

[3] *See also Mahfood v. QVC, Inc.*, No. SACV06-0659 AG(ANx), 2007 WL 9363986, at *4 (C.D. Cal. Feb. 7, 2007); *Barber v. DSW Inc.,* SACV 15-2024-JGB, at *7 (C.D. Cal. April 4, 2016) ("[T]he FAC only provides conclusory allegations that Defendant's comparative reference prices for its products do not reflect the manufacturer's suggested retail price or former prices offered by Defendant."); *Branca v. Nordstrom, Inc.*, No. 14CV2062-MMA JMA, 2015 WL 1841231 at *6 (S.D. Cal. Mar. 20, 2015) ("*Plaintiff fails to allege any facts, much less with particularity,* demonstrating how Nordstrom intentionally yet falsely represented that the "Compare At" price listed on Nordstrom Rack's price tags constitute the former price at which Nordstrom or other retailers previously sold the item.") (emphasis added); *Azimpour v. Select Comfort Corp.*, No. CV 15-4296(DSD/KMM), 2016 WL 3248231, at *2 (D. Minn. June 13, 2016) ("[Plaintiff] provides some detail regarding his purchase of the pillow, but *the complaint is utterly lacking any specific allegations to support the claim* or a broader scheme to defraud… [Plaintiff] simply declares that there was a scheme to defraud consumers.") (emphasis added).

While Plaintiffs purport to base their claims on "information and belief," this is insufficient under well-established law because "a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Here, "Plaintiffs merely identify [and with insufficient detail] certain statements that they claim were misrepresentations, … If such unsupported general claims were sufficient [under Rule 9] plaintiffs could eliminate the falsity requirement entirely." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 994 (9th Cir. 1999). To state a pricing claim, Plaintiffs ***must*** identify specific facts suggesting that the prices they allegedly relied on were misleading. *Nunez v. Best Buy Co.,* 315 F.R.D. 245, 249 (D. Minn. 2016) ("Nunez does not provide facts upon which this allegation is founded. He does not, for example, allege that the price of the microwave was something other than $199.99 on any specific date prior to his purchase of the microwave. Thus, Nunez's allegation upon information and belief fails to satisfy Rule 9(b)."); *Jacobo v. Ross Stores, Inc*., 2016 WL 3482041, at *5 (C.D. Cal. Feb. 23, 2016) ("It is insufficient under Rule 9(b) to simply assert on information and belief that the prevailing retail prices for the items [Plaintiffs purchased] were materially lower than the 'Compare At' prices advertised by Defendant.").

When stripped of its conclusory allegations, the Complaint alleges nothing more than a run-of-the-mill shopping visit: Plaintiffs selected items they wanted to buy, paid their advertised prices, and do not claim to have paid more than the items are worth. The fact that they paid less than the listed "Comparable Value" prices does not support an inference that such prices were deceptive.

### D.  Former-Price Laws Are Inapplicable to "Comparable Value" Prices

Plaintiff claims that J. Crew violated several provisions that apply only to former prices: Cal. Bus. & Prof. Code § 17501, Cal. Civ. Code §1770(a)(13), and 16 CFR § 233.1(a). These authorities are irrelevant because Factory does not advertise former prices. *See Carvalho v. HP, Inc.*, No. 21-CV-08015-BLF, 2022 WL 2290595, at *5 (N.D. Cal. June 24, 2022) ("Because the prices are in fact MSRPs and not 'former price[s],' HP could never be liable under § 17501, which applies only to a 'former price[s],' regardless of how a reasonable consumer interpreted the advertisements."); *see also* Cal. Code Regs. tit. 4, § 1301 (as used in § 17501, the term "former price" includes price representations such as "formerly -," "regularly -," "usually -," "originally -," or "reduced from $___"). Regardless, Plaintiffs' failure to specify the dates of their purchase makes it impossible for J. Crew to evaluate the "prevailing prices" for these

undisclosed items within the three months preceding their unspecified purchase dates.

**E.    Plaintiffs Have Not Pleaded, and Cannot Plead, a Fraud Claim**

Plaintiffs' fraud claim fails on its face because Plaintiffs do not specify the state law they claim applies. *Brown v. Starbucks Corp.*, 18CV2286-JM-WVG, 2019 WL 4183936, at *7–8 (S.D. Cal. Sept. 3, 2019) ("Neither Starbucks nor the court can determine whether Brown alleges California law applies to the claims of out-of-state putative class members, or if she alleges the laws of various unidentified states apply to these putative class members' claims."); *Augustine v. Talking Rain Beverage Co., Inc.,* 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019) ("Plaintiffs failure to identify which state laws govern their common law claims means the claims brought on behalf of the nationwide class have not been adequately pled").

Regardless, this claim is barred by the economic loss doctrine, because Plaintiffs seek to recover for "purely economic loss due to disappointed expectations" and cannot "demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *see also Vavak v. Abbott Lab'ys, Inc.*, 2011 WL 10550065, at *5 (C.D. Cal. June 17, 2011).

**F.    Plaintiffs' Unjust-Enrichment Claim is Not Cognizable**

"California does not recognize a separate cause of action for unjust enrichment."  *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021) (collecting California and federal cases); *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 336, *reh'g denied* (June 19, 2020), *review denied* (Dec. 31, 2020); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132–33 (N.D. Cal. 2020).  As a result, "courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky*, 445 F. Supp. 3d at 132.  This Court should do the same.

**VI.    CONCLUSION**

Plaintiffs cannot be permitted to assert claims of fraud armed only with their factually unsupported "beliefs" and gut feelings that future discovery will uncover facts to support a violation of the law. Accordingly, their Complaint should be dismissed in its entirety.

Dated:  May 17, 2023                          Respectfully submitted,


                                              *s/ Meegan B. Brooks*
                                              STEPHANIE SHERIDAN (CA 135910)
                                              MEEGAN B. BROOKS (CA 298570)

NATALIE M. CUADROS (CA 326368)
OSCAR A. ALVAREZ (CA 344062)
Benesch, Friedlander, Coplan & Aronoff LLP


Attorneys for Defendant
J. CREW GROUP, LLC

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
**Case No. 4:23-cv-01695-JSW**